# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 01 2015 ★

LONG ISLAND OFFICE

Nos 14-CV-5066 (JFB), 14-CV-7123 (JFB)

IN RE JERRY CAMPORA, JR.,

Debtor,

JERRY CAMPORA, JR.,

Appellant,

VERSUS

HSBC BANK USA, N.A. AS TRUSTEE FOR HOMESTAR 2004-2, AND ALAN TRUST, UNKNOWN CLAIMANTS DOES 1-10 & MARIANNE DEROSA,

Appellees.

**MEMORANDUM AND ORDER**
September 1, 2015

JOSEPH F. BIANCO, District Judge:

The instant case involves two separate appeals from orders in the voluntary bankruptcy proceeding of debtor Jerry Campora, Jr., (hereinafter "appellant" or "Campora"), under Chapter 13 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (hereinafter the "Bankruptcy Court"), against HSBC Bank USA, National Association as Trustee for Homestar Mortgage Acceptance Corp., Asset-Backed Pass-Through Certificates, Series 2004-2 (hereinafter "HSBC") and Marianne DeRosa, the Chapter 13 Trustee in Campora's bankruptcy, (hereinafter "DeRosa" or "Trustee," and together with HSBC, "appellees"). Specifically, in his first appeal, 14-CV-5066 (JFB), filed on August 26, 2014, pro se Campora appeals from an order of the Honorable Alan S. Trust dated July 3, 2014, which granted HSBC's request for relief from the automatic stay in the bankruptcy case under 11 U.S.C. § 362(d)(1). Appellant also seems to appeal Judge Trust's rulings during a June 30, 2014 hearing, where he dismissed the Chapter 13 case with prejudice for one year, assessed sanctions against the appellant in the amount of $10,000, and awarded attorney's fees and costs to HSBC, after concluding that appellant raised claims in bad faith and engaged in vexatious

1

conduct. In his second appeal, 14-CV-7123 (JFB), filed on December 5, 2014, appellant appeals Judge Trust's decision and order, dated October 6 2014, wherein he memorializes the rulings made at the June 30, 2014 hearing. For the reasons set forth below, the Court affirms the rulings of the Bankruptcy Court in all respects.

I. BACKGROUND

A. Facts

The following facts are taken from the record of the Bankruptcy Court in the underlying proceeding. Appellant's real property located at 1 Market Path, Setauket, New York (hereinafter "1 Market Path" or "the property") is secured by a mortgage held by HSBC in the principal amount of $513,000.000. When appellant became delinquent in his mortgage payments, HSBC commenced a foreclosure action in New York Supreme Court, Suffolk County (*HSBC et al., v. Campora*, Index No. 43034/09) on or about October 28, 2009, and obtained a judgment of foreclosure and sale on October 1, 2013. (Bankr. Ct. Docket No. 30, Exhibit B, hereinafter "Judgment of Foreclosure and Sale") The Judgment of Foreclosure and Sale, signed by the Honorable Joseph Farneti, Acting Supreme Court Justice, authorized the property to be sold at a foreclosure sale, scheduled for January 29, 2014, to satisfy Campora's debt to HSBC.

On January 28, 2014, appellant filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the Bankruptcy Court. *In Re Campora*, Bankruptcy Petition No. 14-70330 (AST) (E.D.N.Y.). This filing resulted in an automatic stay of the foreclosure sale of the property under 11 U.S.C. § 362. Shortly thereafter, DeRosa was appointed as Trustee.

On February 26, 2014, HSBC filed a Notice of Mortgage Payment Change under Federal Rule of Bankruptcy Procedure 3002.1(b). Plaintiff filed an Objection to that notice on March 3, 2014, asserting that HSBC lacked standing to bring any proof of claim, but did not include a Notice of Hearing filing. Accordingly, the Bankruptcy Court did not hold a hearing on the matter. Appellant later filed an order to show cause on May 1, 2014, requesting an expedited emergency hearing on his objection to the proof of claim, which was denied by the Bankruptcy Court.

On March 12, 2014, HSBC filed a timely proof of claim demonstrating a total amount due of $630,130.04, which included $221,864.70 of pre-petition arrears. On March 21, 2014, appellant filed a Chapter 13 Plan ("the Plan") that provides for the following payment schedule:

-$51.00 commencing April 10, 2014 through and including April 9, 2019;
-$63.66 commencing April 10, 2014 through and including April 9, 2019;
-$75.00 commencing April 10, 2014 through and including April 9, 2019.

(Bankr. Ct. Docket No. 23.) In the Plan, appellant states that he "knows of no secured liens," but also asserts that he intends to avoid HSBC's mortgage lien on the property in the amount of $583,000.00 under 11 U.S.C. § 544(a)(3). (Plan ¶¶ 2, 4.)

The Trustee filed a motion to dismiss the case under 11 U.S.C. § 1307(c) on April 4, 2014, alleging that appellant failed in his duties to start making payments within the time limits specified in 11 U.S.C. § 1326(a)(1), provide a copy of his federal

2

income tax return as required by 11 U.S.C. § 521(e)(2)(A)(i), provide the Trustee with the required disclosure documentation required under the Local Bankruptcy Rules, and timely serve the Plan on the Trustee and all the creditors. The Trustee also objected to appellant's proposed plan, noting that it failed to meet the requirements of 11 U.S.C. §§ 1325(a)(5), 1326(a)(1), and 1322(d)(1). (Bankr. Ct. Docket No. 24.)

HSBC filed an objection to confirmation of the Plan on April 17, 2014, on the grounds that Campora failed to cure the mortgage arrears. On April 30, 2014, HSBC filed a motion seeking relief from the automatic stay of the foreclosure action against Campora. Appellant filed an opposition to the Trustee's motion to dismiss on May 1, 2014.

On May 8, 2014, Judge Trust held a hearing on the Trustee's motion to dismiss. During the hearing, Campora stated that HSBC's Judgment of Foreclosure and Sale had been vacated by an order of the Supreme Court of the State of New York, Suffolk County. Judge Trust ordered the appellant to file that order with the Bankruptcy Court by May 19, 2014. Campora did not file the order, but instead on May 16, 2014 filed a document entitled "Notice of Timely Satisfaction of Request by Judge Trust," which included a document that claimed to be an order of the Supreme Court stating that the Judgment of Foreclosure was void, which was in fact signed by the appellant himself. (Bankr. Ct. Docket No. 43.)

The Bankruptcy Court issued an Order to Show Cause on May 30, 2014 directing appellant to show cause as to why the Bankruptcy Court should not strike his filing, sanction him for acting in bad faith and attempting to mislead the court, and dismiss the case with prejudice. A hearing on the Order to Show Cause and on HSBC's motion for relief from the stay was held on June 30, 2014. During the hearing, Judge Trust struck Campora's Notice of Timely Satisfaction and sanctioned appellant in the amount of $10,000 for raising claims without color of law and acting in bad faith, making false representation to the Court, attempting to mislead the Court by filing a fabricated judgment, and disrespecting the Court. The Judge also awarded HSBC attorney's fees in the amount of $3,635, which were incurred as a consequence of Campora's vexatious conduct. Finally, the Bankruptcy Court dismissed the case with prejudice for one year. Judge Trust memorialized his decision in an order dated October 6, 2014. (Bankr. Ct. Docket No. 82.) Following the hearing, by Order dated July 3, 2014, the Bankruptcy Court granted HSBC's request for relief from the automatic stay under 11 U.S.C. § 362(d)(1). (Bankr. Ct. Docket No. 59.) At a foreclosure sale on March 25, 2015, 1 Market Path was sold to HSBC. (15-CV-5066, ECF No. 14.)

B. Procedural History

On July 10, 2014, appellant filed a notice of appeal from the Bankruptcy Court's July 3, 2014 order granting HSBC relief from the automatic stay of foreclosure proceedings and from the Bankruptcy Court's rulings during the June 30, 2014 hearing. The appeal was docketed in this Court on September 2, 2014 under 14-CV-5066 (JFB). Appellant filed his brief on September 16, 2014; HSBC responded on September 29, 2014; the Trustee responded on September 30, 2014; and appellant filed two separate replies to the oppositions on October 14, 2014.

3

On October 20, 2014, appellant filed a second notice of appeal to the District Court, this time appealing the Bankruptcy Court's Decision and Order dated October 6, 2014. The appeal was docketed in this Court on December 17, 2014 under 14-CV-7123 (JFB). Appellant filed his brief on December 31, 2014. HSBC responded on January 13, 2015, and the Trustee responded on January 14, 2015. Appellant did not file a reply brief.

On November 6, 2014, appellant moved to consolidate his first appeal with his second appeal under Federal Rule of Civil Procedure 42(a), given that his appeal of the June 30, 2014 rulings were memorialized in Bankruptcy Court's October 6, 2014 order. On December 12, 2014, HSBC replied in opposition to the motion to consolidate and filed a cross-motion for attorney's fees associated with the costs of the appeal in the amount of $1,312.50.[1]

The court has fully considered all of the submissions of the parties.

II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *see also Lubow Machine Co., Inc. and Marksment Manufacturing, Inc., v. Bayshore Wire Products Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law *de novo*, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion." (citations omitted)); *accord Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs Inc.)*, 922 F.2d 984, 988-

---

[1] In light of the issuance of the present opinion and order, appellant's motion to consolidate is terminated as moot. The Court also notes that HSBC, in its opposition to the consolidation motion, sought attorney's fees with respect to the filing of the opposition, on the grounds that Campora "agreed to pay reasonable attorney's fees in any action taken in bankruptcy proceedings" under paragraph 9 of the mortgage. (14-CV-5066, ECF No. 13, ¶ 22.) As a threshold matter, the Court concludes that the request is denied on procedural grounds because it was not filed as a formal cross-motion, and no memorandum of law accompanied that motion. Thus, appellant has not had the opportunity to respond to such a motion for attorney's fees. If HSBC does file a formal motion, the brief should address, *inter alia*, (1) why the opposition to consolidation was necessary to "protect its interest in the Property and/or rights under [the] Security Instrument," (2) compliance with the notice provision of Section 9 of the mortgage agreement, and (3) the provision that suggests that the Security Instrument would be the protection in the event the promise to pay was not kept. (*See* ECF. No. 13, at 51 ("I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me notice requesting I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest."). Accordingly, the request for attorney's fees on the opposition to the consolidation motion is denied without prejudice to filing a formal motion.

4

89 (2d Cir. 1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Collins v. Hi-Qual Roofing & Siding Materials, Inc.*, Nos. 02-CV-0921E(F), 02-CV-0922E(F), 2003 WL 23350125, at *4, n.16 (W.D.N.Y. Dec. 18, 2003) ("'[A] finding is only clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . This standard precludes this Court from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced that it would have weighed the evidence differently.'" (quoting *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 484 (E.D. Pa. 1989)).

The Court will review the Bankruptcy Court's decision to lift the automatic stay for abuse of discretion. *See Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1286 (2d Cir. 1990) ("we may overturn a denial of a motion to lift the automatic stay upon a showing of abuse of discretion"); *Case v. U.S. Internal Revenue Service (In re Case)*, 384 F. App'x 43, 44 (2d Cir. 2010) ("We review a decision to lift an automatic stay for abuse of discretion."); *Grocery Haulers, Inc. v. The Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.)*, No. 11-CV-3558 (CS), 2012 WL 264187, at *3 (S.D.N.Y. Jan. 30, 2012) ("A bankruptcy court's equitable discretion—such as its determination on a motion to lift the automatic stay—is reviewed for abuse of discretion.").

III. DISCUSSION

A. The July 3, 2014 Order Granting Relief from the Automatic Stay

In his first appeal, 14-CV-5066, Campora challenges the Bankruptcy Court's July 3, 2014 order lifting the stay to allow HSBC to proceed with its foreclosure action on 1 Market Path under 11 U.S.C. § 362(d)(1).[2] Campora argues that the Bankruptcy Court's decision to lift the stay was an abuse of discretion, on the grounds that HSBC lacked standing to file the motion for relief in the first instance, asserting that "there is nothing of record (i.e. no valid assignments, no note, no chain of title, etc.) to show HSBC is in possession of the original note/security (as claimed) and is the beneficiary and real party in interest." (Appellant's Brief, 14-CV-5066, at 4.) For the reasons that follow, the Court finds that the Bankruptcy Court did not abuse its discretion when it granting HSBC relief from the automatic stay. Even under *de novo* review, the Court reaffirms the Bankruptcy Court's July 3, 2014 order.

The relevant statute, 11 U.S.C. § 362(d)(1), states that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under the subsection (a) of this section, such as by

---

[2] The Court notes that appellant raises a number of arguments in this appeal regarding Judge Trust's ruling during the June 30, 2014 hearing. Because Judge Trust's rulings are memorialized in his subsequent October 6, 2014 written opinion, the Court addresses these arguments (and the appellees' responses) below in conjunction with its consideration of appellant's second appeal, 14-CV-7123.

terminating, annulling, modifying, or conditioning such stay - -

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . .

11 U.S.C. § 362(d)(1). First, the Court will review whether or not the Bankruptcy Court properly concluded that HSBC qualifies as a party in interest for the purposes of this section, and then review for abuse of discretion the Bankruptcy Court's determination that cause existed to lift the stay.

i. Party in Interest

The "evidence necessary to establish standing" as a party in interest "to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage." *In re Escobar*, 457 B.R. 229, 239 (Bankr. E.D.N.Y. 2011). However, proof of standing does "not require evidence which would be necessary to prevail over a claim objection or to prevail in an adversary proceeding asserting that the claimant does not hold a valid, perfected and enforceable lien." *Id.* at 239. In fact, "the level of proof necessary to commence a foreclosure action under New York law . . . is the appropriate level of proof necessary to confer standing to seek stay relief." *Id.* at 241; *see also In re Idicula*, 484 B.R. 284, 287 (Bankr. S.D.N.Y. 2013) (a creditor may "demonstrate[ ] its 'right to payment' [by demonstrating its] ability to seek the state law remedy of foreclosure.") (internal citations and quotations omitted).

Accordingly, in this case "where the movant claims rights as a secured creditor by virtue of an assignment of rights to a promissory note secured by a lien against real property," under New York law, to establish standing the movant must produce "satisfactory proof of [movant's] status as the owner or holder of the note at issue." *Escobar*, 457 B.R. at 241 (citing to *Bank of New York v. Silverberg*, 86 A.D.3d 274 (2d Dep't 2011)); *see also In re Fennell*, 495 B.R. 232, 239 (Bankr. E.D.N.Y. 2012) (finding that a party "through its physical possession of the Note and Mortgage . . . [has] met its burden of establishing that it possesses standing to request relief from the automatic stay pursuant to § 362(d)(1)"). In this case, HSBC has produced a copy of the original note, and demonstrated that it is the holder and owner of that note. (HSBC's Brief, 14-CV-5066, at 13.) Furthermore, the State Court has already determined that HSBC had standing to pursue the foreclosure action—it issued a judgment of foreclosure and sale on October 1, 2013, before Campora filed a voluntary petition for bankruptcy under Chapter 13, and the sale took place on March 25, 2015. Accordingly, the Court concludes that the Bankruptcy Court properly determined that HSBC is a party in interest and entitled to move for relief from the stay under 11 U.S.C. § 362(d)(1).[3]

---

[3] The Court notes that appellant asserts that the assignment document attached to HSBC's motion is fraudulent. However, as HSBC notes, a written assignment document evidencing transfer is not required under New York Law. *See In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010) ("Thus, an assignee can demonstrate standing by attaching the note and the mortgage to a Proof of Claim; it does not need to attach a written assignment to the proof of claim."); *In re Conde-Dedonato*, 391 B.R. 247, 251 (Bankr. E.D.N.Y. 2008) ("Thus, a mortgage and note can be transferred by delivery, and do not have to be evidenced by a written

6

Furthermore, the Court notes that debtor's attempt to put HSBC's standing into issue is also barred by the Rooker-Feldman doctrine and *res judicata*. Because the requirements for standing under § 362(d)(1) are equivalent to those to commence a foreclosure action in the state court, Campora's appeal amounts to an attempt to re-litigate the New York State Court's Judgment of Foreclosure and Sale. Accordingly, as the Court explained in its August 28, 2015 Order in appellant's civil case, 14-CV-4034, any argument that HSBC lacked standing to bring the foreclosure action is barred by the Rooker-Feldman doctrine and *res judicata*. Accordingly, the Court concludes that any attempt to re-litigate that issue in this context is similarly barred.

ii. Lifting the Stay "for cause"

Having affirmed the Bankruptcy Court's conclusion that HSBC is a party in interest, the Court now reviews, for abuse of discretion, the Bankruptcy Court's conclusion that relief was justified for cause under 11 U.S.C. § 362(d)(1). The Court must consider the test articulated by the Second Circuit in *In re Sonnax Industries Inc.*, 907 F.2d 1280 (2d Cir. 1990). There, "the Second Circuit provided a non-exclusive list of factors that may be relevant in determining whether an automatic stay should be lifted for 'cause' under § 362(d)(1)."[4] *In re Watkins*, Nos. 06-CV-1341 (DGT), 06-CV-597 (DGT), 2008 WL 708413, at *3 (E.D.N.Y. Mar. 14, 2008).

Considering all of the *Sonnax* factors, the Court finds that cause existed to lift the stay pursuant to 11 U.S.C. § 362(d)(1). In its motion to vacate the automatic stay, HSBC established that Campora had not made mortgage payments since February 2014. A debtor's failure to make post-petition mortgage payments constitutes sufficient cause to modify an automatic stay. *See In re Taylor*, 151 B.R. 646 (E.D.N.Y. 1993) ("A debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay."); *In re Fennell*, 495 B.R. at 239 (concluding that cause existed to lift the automatic stay when debtor failed to make post-petition mortgage payments, and failed to "introduce [any] evidence to contradict [the] assertion that she is delinquent on her mortgage payments"); *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) ("[T]he failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the

---

assignment."). Further, the Court notes that in New York "physical possession of the original note and mortgage received by delivery negates any need for a written assignment." *In re Feinberg*, 442 B.R. 215, 224 (Bankr. S.D.N.Y. 2010). HSBC has produced such evidence in this case.

[4] These factors include: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus., Inc.*, 907 F.2d at 1286.

Bankruptcy Code."); *In re Davis*, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986) ("[T]he debtors' failure to make post-confirmation payments will also constitute cause for lifting the stay").

It is evident from the record that the stay was properly lifted pursuant to 11 U.S.C. 362(d)(1). Campora, in his appeal, offers no evidence to contradict HSBC's assertion that he was delinquent in his payments. Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion when it lifted the automatic stay. Even under *de novo* review of the Bankruptcy Court's decision, the Court finds that cause existed to lift the stay.

B. The October 6, 2014 Decision and Order

In his second appeal, 14-CV-7123, Campora appeals Judge Trust's October 6, 2014 Decision and Order ("Decision and Order"), which strikes Campora's submission to the Court entitled "Notice of Timely Satisfaction"; denies his objection to HSBC's proof of claim; dismisses his case with prejudice for one year; sanctions him in the amount of $10,000 for raising claims without color of law and acting in bad faith; and awards HSBC attorney's fees in the amount of $3,635.50 that are attributable to Campora's bad conduct. The Court will address each of these grounds for appeal in turn.

i. Striking Debtor's Notice of Timely Satisfaction

As detailed *supra*, during a May 8, 2014 hearing with the Bankruptcy Court, debtor informed Judge Trust that the state court had vacated the Judgment of Foreclosure and Sale against his property—stating, "It's been established in state court that it's void" and that "[t]here is a judgment filed in case number 12-06874 vacates the void order." (May 8 Hearing Tr. at 11:2-8, 12:1-25.) The Bankruptcy Court ordered Campora to file the judgment he referenced within ten days. (*Id.* at 15:11-18.) On May 16, 2014, Campora filed a document entitled "Notice of Timely Satisfaction" with the Bankruptcy Court. (Bankr. Ct. Docket No. 43.) As Judge Trust noted in his May 30, 2014 Order to Show Cause, the Notice "contains a number of scandalous allegations, in apparent violation of Rule 7012 of the Federal Rules of Bankruptcy Procedure." (Bankr. Ct. Docket No. 48 at 6.) For instance, it alleges that Judge Mark Cohen, "in concert with attorneys for plaintiff, HSBC . . . did threaten by extortionate means to sell affiant's home by theft, forgery"; that "Judges Mark Cohen, Melvyn Tanenbaum and Joseph Farneti, have each admitted via tacit procuration, to perjuring their oaths of office; to entering void or illegal orders"; and that Judge Melvyn Tanenbaum "act[ed] as a judge for eight months without occupying the office and doing so without a properly, timely filed oath of office." (Bankr. Ct. Docket No. 43 at 2-3.)

In addition, attached to his Notice of Timely Satisfaction, Campora included two documents that purport to be orders or judgments from the Suffolk County Supreme Court. The first is labeled "Judgment" and includes the header "SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF SUFFOLK." (Bankr. Ct. Docket No. 43, Exhibit A at 1.) This "Judgment," which is signed by "Jerry Campora, Junior, Attornatus Privatus," appears to award appellant $513,000.00 in damages against HSBC "for the conversion and theft of counter-plaintiff's note/security", rescinds the mortgage and promissory note, and permanently enjoins HSBC from "foreclosing, liening,

trespassing upon, or interfering in any way with counter-plaintiff's property at one Market Path Setauket New York." (*Id.* at 19.)

The second document is entitled "2nd Writ of Error," which professes to have been "entered by HON. JOSEPH FARNETTI" and also includes the header: "Supreme Court of the State of New York, County of Suffolk." (Bankr. Ct. Docket No. 43, Exhibit D at 1.) The opening sentence reads: "THE COURT COMES NOW, ON ITS OWN MOTION, to further review the facts, record, and process regarding the putative orders filed on September 21, 2012 by Joseph Farneti." (*Id.* at 2.) The document claims to "impeach[ ] and rescind[ ]" a number of the State Court orders in the foreclosure proceeding (specifically, those that dismissed plaintiff's collateral attack as barred under the doctrines of *res judicata* and collateral estoppel). (*Id.* at 14.) The document is once again signed by Campora, as "Attornatus Privatus" on behalf of the State Court. (*Id.*)

HSBC filed a letter in response to Campora's filing on May 28, 2014 stating that no such orders exist and submitted several State Court orders from the underlying foreclosure proceeding, including one which denies Campora's attempt to seek relief through a collateral attack of the foreclosure case. (Bankr. Ct. Docket No. 45.) The Bankruptcy Court issued an Order to Show Cause on May 30, 2014, directing Campora to show cause why his filing should not be stricken from the record, and why his case should not be dismissed with prejudice, given his attempt to mislead the Court by filing fraudulent documents. (Bankr. Ct. Docket No. 48.) In response, Campora submitted documents in which he referred to the purported Judgment as a "judgment lawfully rendered by the Court of Record." (Bankr. Ct. Docket No. 11.) During the hearing, appellant maintained that the documents he filed were legitimate and failed to explain his conduct. (June 30 Hearing Tr. at 17:16-18:17.) In addition, the Bankruptcy Court noted that during the hearing the "Debtor continued to exhibit disrespect for the Court and the parties" by "repeatedly interupt[ing] the Court," "continuously object[ing] to opposing counsel's arguments," "refus[ing] to stand when addressing the Court," and "disrespectfully ask[ing] the Court inappropriate questions." (Decision and Order at 12, citing conduct during June 30 hearing, Tr. 8:17-18, 8:8, 11:4.)

A court has discretion to strike pleadings under Fed Rule Civ. P. 12(f)[5], 11 U.S.C. § 107(b)(2), and Fed. R. Bankr P. 9018.[6] Under Rule 12(f), a court on its own or upon motion "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Under Rule 12(f), a pleading qualifies as scandalous if it "'reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court.'" *Lynch v. Southampton Animal Shelter Foundation, Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y.) (quoting *Cabble v. Rollieson*, No. 04-CV-9413, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006)). Similarly, under 11 U.S.C. § 107(b)(2), a Bankruptcy Court may, on request of a party in interest or on its own

---

[5] *E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004) (noting a Court has discretion under Rule 12(f) to strike a pleading).

[6] Rule 9018 permits a court "[o]n motion or on its own initiative, with or without notice, . . . [to] make any order which justice requires . . . to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code."

9

motion, "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). Because the word "scandalous" is not defined in "§ 107 nor any other provision of the Bankruptcy Code", courts have relied on various sources to determine whether a filing is scandalous. *In re Starbrite Prop. Corp.*, No. 11-40758, 2012 WL 2050745, at *6 (Bankr. E.D.N.Y. June 5, 2012). However, Bankruptcy Courts in this Circuit have concluded that "the relevance standards articulated in the context of Rule 12(f) apply as well in determining whether protection is warranted under § 107(b)(2)." *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 559 (Bankr. S.D.N.Y. 2007); *see also In re Starbrite Prop. Corp.*, at *6.

In this case, the Bankruptcy Court concluded that "under either Rule 12(f) or § 107(b) the Notice unquestionably contains scandalous allegations as against Judges of the State Court . . . and which have no bearing on Debtor's Claim Objection and the prosecution of his case. Debtor has no apparent basis to have made such allegations, other than based on his displeasure at having lost in the underlying litigations." (Decision and Order at 19.) After a review of the parties' filings in the bankruptcy case, the Court agrees and concludes that that the Bankruptcy Court's decision to strike the submission easily survives review under a clear error standard. It is clear that the Bankruptcy Court was correct in concluding that the documents submitted by Campora were not authentic and included scandalous matter—accordingly, the decision to strike them from the record would also be affirmed under a *de novo* standard of review.

ii. Denying Campora's Objection to HSBC's Proof of Claim

Judge Trust's Decision and Order also denies Campora's Objection to HSBC's Proof of Claim, which he filed on March 3, 2014. [7] (Bankr. Ct. Docket No. 18.) Specifically, plaintiff objected on the grounds that HSBC lacked standing to bring any proof of claim.

Under 11 U.S.C. § 502(a) a proof of claim "is deemed allowed, unless a party in interest . . . objects." Federal Rule of Bankruptcy Procedure 3001 states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also In re Taranto*, No. 10-76041-ast, 2012 WL 1066300, at *5 (Bankr. E.D.N.Y. Mar. 27, 2012); *In re King*, No. 08-61922, 2010 WL 4290527, at *5 (Bankr. E.D.N.Y. Oct. 20, 2010)). "The objecting party bears the burden of putting forth sufficient evidence to rebut the *prima facie* validity of the claim." *In re Taranto*, at *5 (citing *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 540 (S.D.N.Y. 2001)).

Section 502(b) of the Bankruptcy Code enumerates nine circumstances under which a Court may bar a proof of claim filed under § 501. In this case, though Campora did not specify which ground he was objecting under, the Bankruptcy Court assumed it to be § 502(b)(1), which prevents a claim that is "unenforceable against the debtor and

---

[7] The Bankruptcy Court noted that though the "objection was [not] properly filed or noticed for a hearing in accordance with either the Bankruptcy Rules, Local Bankruptcy Rules, or the Court's published procedures" and was riddled "with procedural defects," the Court "nevertheless reviewed and considered Debtor's objections." (Decision and Order at 4 n.2.)

10

property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

The Bankruptcy Court concluded that "Debtor has failed to come forward with a scintilla of evidence to meet his burden to rebut the *prima facie* validity of the claim." (Decision and Order at 21.) Judge Trust emphasized that "[t]he HSBC Claim has been adjudicated in favor of HSBC by the State Court by, *inter alia,* entry of the Foreclosure Judgment, and Debtor's collateral attack on the Foreclosure Judgment has been repudiated by the State Court in the strongest terms. Thus Debtor's Objection to the HSBC Claim is overruled." (Decision and Order at 21.) After reviewing the Bankruptcy Court record—and reiterating that HSBC's standing has already been decided in the State Court proceedings and any challenge thereto is barred by Rooker-Feldman and *res judicata*—the Court agrees and finds that the Bankruptcy Court did not err in sustaining HSBC's proof of claim and denying appellant's objections.

iii. Dismissing the Case with Prejudice

Judge Trust in his Decision and Order also concluded "that cause exists to dismiss Debtor's case under § 1307(c), and to prejudicially dismiss Debtor's case for a period of one (1) year." (Decision and Order at 21.) Judge Trust specifically cited Campora's bad faith and vexatious conduct, and the grounds for dismissal articulated by the Trustee in her April 4, 2014 motion to dismiss.[8] For the reasons discussed below, the Court concludes that the Bankruptcy Court did not err in dismissing the case with prejudice.

Section 1307(c) of the Bankruptcy Code provides that a bankruptcy court may, in its discretion, dismiss a debtor's case for cause when dismissal is in the best interests of the creditors and the estate. Specifically, § 1307(c) reads in relevant part as follows:

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . [if it] is in the best interests of creditors and the estate, for cause, including—
> 
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> 
> . . .
> 
> (4) failure to commence making timely payments under section 1326 of this title
> 
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan.

11 U.S.C. § 1307(c).

In this case, as of the June 30, 2014 hearing, Campora failed to comply with disclosure requirements outlined in the Local Bankruptcy Rules for the Eastern District of New York (E.D.N.Y. LBR 2003-

---

[8] During the hearing on June 30, 2014, the Bankruptcy Court asserted "[i]n terms of dismissal of this case, both by virtue of the Chapter 13 Trustee's Motion to Dismiss and by virtue of the Court's Order to Show Cause giving notice to the Debtor of the Court's intention to consider today dismissal with prejudice, it's beyond question that this case needs to dismissed . . . [T]he Debtor's conduct in this case indicates no good faith intention to prosecute meaningfully a Chapter 13 case." (June 30 Hearing Tr. at 33-34.)

1),[9] and failed to provide Trustee with a copy of a federal income tax return for the most recent year, or a copy thereof, as required under 11 U.S.C. § 521(e)(2)(A)(i). "Bankruptcy is a privilege and not a right," *In re Sochia*, 231 B.R. 158, 160 (Bankr. W.D.N.Y. 1999), and in seeking protection under the Bankruptcy Code, a debtor "has the responsibility to inform [himself] of [his] duties" under the Code. *In re Ward*, 423 B.R. 22, 34 (Bankr. E.D.N.Y. 2010). When a "[d]ebtor has not complied with a number of [his] obligations imposed by the Bankruptcy Code, relief under § 1307(c) is appropriate." *Id.* at 33. In particular, failure to comply with 11 U.S.C. § 521(e)(2)(A)(i) shall result in dismissal of a debtor's case, unless he is able to demonstrate that his failure to comply was the result of circumstances beyond his control. 11 U.S.C. § 521(e)(2)(B). Courts have noted that the language of Section 521(e)(2)(B) is mandatory, requiring dismissal in all cases except those where the debtor can make the requisite showing to excuse his failure to file. *See In re Casey*, 274 F. App'x 205, 206 (3d Cir. 2008) ("The statute speaks in mandatory terms and requires dismissal unless the debtor makes that demonstration [that the failure to file was due to circumstances beyond the debtor's control]."); *In re Nordstrom*, 381 B.R. 766, 769 (C.D. Cal. 2008) ("If the trustee elects to seek dismissal and establishes a *prima facie* case under § 521(e)(2)(A)(I), the court must dismiss the case unless the debtor establishes that timely compliance was prevented by circumstances beyond the debtor's control."); *In re Gessner-Elfman*, Nos. 06–11109(EEB), 06–11145(EEB), 06–11146(EEB), 2006 WL 2989005, at *2 (Bankr. D. Colo. Sept. 22, 2006) ("In some instances, the Court has the ability to waive the Debtor's failure to comply with the requirements. But, in this case [under § 521(e)(2)(B)], the Court has no such ability. Unless a debtor can show that circumstances beyond her control prevented her from complying with the law, the Court must dismiss the case.").

In addition, appellant also failed to commence making timely payments as required under 11 U.S.C. § 1326(a)(1)(A), which provides that "[u]nless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or order for relief, whichever is earlier, in the amount—(A) proposed by the plan to the trustee..." Here, though his first Chapter 13 plan payment was due on or before February 27, 2014, appellant did not submit a payment to Trustee until April 28, 2014. (Trustee's Brief, 14-CV-7123, at 10.) Appellant's failure to commence making timely payments qualifies a valid ground for dismissal under § 1307(c)(4). *See In re Tornheim*, 239 B.R. 677, 685 (Bankr. E.D.N.Y. 1999) ("It is beyond argument that the failure to make plan payments is violative of Chapter 13.").

Campora also failed to file a confirmable plan, as the plan filed fails to comply with 11 U.S.C. § 1325(a), in that it does not provide for payments to begin within 30 days of filing the petition, it does not provide for Campora's payment of the mortgage arrears on the proof of claims filed

---

[9] Specifically, Trustee notes that appellant failed to provide Trustee with "(1) an affidavit stating whether or not the Appellant had paid all amounts required to be paid under a domestic support obligation that first came payable after the date of the filing of the petition or that the Appellant was not responsible to make any such payments, (2) documentation of payment of all mortgage payments that have come due as of the filing of the petition, and (3) documentation of the current value of all real property in which the Debtor has an ownership interest." (Trustee's Brief, 14-CV-7123, at 9.)

by the creditors, HSBC has not accepted the plan (and in fact, filed an objection to the plan), and finally, as discussed below, Campora lacks good faith. Accordingly, on this basis alone, dismissal of Campora's case is justified under § 1307(c)(5). Under a clear error standard, and even under a *de novo* standard, the Court concludes that the Bankruptcy Court had a valid basis for dismissing the case under any of these grounds under § 1307(c).

Finally, the Bankruptcy Court also dismissed appellant's case after finding that he clearly lacked good faith in pursuing bankruptcy protection. Although bad faith is not explicitly enumerated in § 1307(c), "'it is well established that lack of good faith may also be cause for [conversion or] dismissal under § 1307(c).'" *In re Prisco*, 11-CV-00474 (LEK), 2012 WL 4364311, at *4 (N.D.N.Y. Sept. 24, 2012) (quoting *In re Dixon*, No. 08-10510, 2009 WL 151688, at *2 (Bankr. E.D. Pa. Jan. 20, 2009), *aff'd*, No. 09-1451, 2009 WL 1798819 (E.D. Pa. June 24, 2009)); *see also Plagakis v. Gelberg (In re Plagakis)*, No. 03 CV 0728 (SJ), 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004); *In re Setzer*, 47 B.R. 340, 347 (Bankr. E.D.N.Y. 1985); *In re Charles D. Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995). "[D]ebtors who lack good faith cannot be rewarded with the benefits of the bankruptcy process." *In re Tornheim*, 239 B.R. at 686 (citing *In re Natural Land Corp.*, 825 F.2d 296, 297-98 (11th Cir. 1987)). "A bankruptcy court's determination of 'bad faith' is a question of fact, and thus is reviewable under the clearly erroneous standard." *In re Plagakis*, 2004 WL 203090, at *4 (citing *In re Barbieri*, 226 B.R. 531, 535 (Bankr. E.D.N.Y. 1998), *rev'd on other grounds*, 199 F.3d 616 (2d Cir. 1999); *U.S. Fidelity & Guar. Co. v. DJF Realty & Suppliers*, 58 B.R. 1008, 1011 (Bankr. N.D.N.Y. 1986)).

Evaluation of whether a debtor had "bad faith in filing and maintaining a Chapter 13 case requires a careful examination of the totality of the circumstances on a case-by-case basis."[10] *In re Tornheim*, 239 B.R. at 686 (citing *In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995)). Courts have determined debtors had "bad faith in Chapter 13 cases in the following circumstances: 1) the debtor has few or no unsecured creditors; 2) the debtor has previously filed for bankruptcy; 3) the debtor's pre-petition conduct was improper; 4) the debtor's petition allows him or her to evade court orders; 5) the debtor has few debts to non-moving creditors; 6) the petition was filed on the eve of foreclosure; 7) the foreclosed property was the sole or major asset of the debtor; 8) no possibility exists for reorganization; 9) the debtor's income is insufficient to operate; 10) there is no pressure from non-moving creditors; 11) reorganization essentially involves the resolution of a two-party dispute; and 12) the debtor filed solely to obtain an automatic stay." *In re Plagakis*, 2004 WL 203090, at *4.

---

[10] Courts have considered other factors including: "whether (1) the debtor has only one asset; (2) that asset is encumbered by secured liens; (3) the petition was filed on the eve of foreclosure; (4) the sole or major asset of the debtor is the foreclosed property; (5) the pre-petition conduct of the debtor was proper; (6) there are available sources of income to fund a repayment plan; (7) there are few, if any, unsecured creditors; (8) the reorganization essentially involves the resolution of a two party dispute; and (9) the debtor filed the bankruptcy case solely to invoke the automatic stay." *In re Tornheim*, 239 B.R. at 686 (citing *In re Klevorn*, 81 B.R. at 11; *In re Cornelius*, 195 B.R. 831, 836 (Bankr. N.D.N.Y. 1995); *see also Little Creek Dev. Corp. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Corp.)*, 779 F.2d 1068, 1072–73 (5th Cir. 1986) (utilizing similar factors in the context of a Chapter 11 case.)).

In this case, many of the indicia of bad faith are present. Debtor filed his Chapter 13 petition on January 28, 2014, one day before the scheduled foreclosure sale on January 29, 2014. Debtor has not proposed a Chapter 13 plan that satisfies the requirements of 11 U.S.C § 1325(a), and as a result, it is not confirmable. *See id.* (finding debtor acted in bad faith where, among other things, he "did not propose a feasible Chapter 13 plan that meets the requirements of 11 U.S.C. § 1325(a)(6) and 11 U.S.C. § 1322(a)(1); his plan is therefore not confirmable pursuant to 11 U.S.C. § 1325(a)(1).") In addition, debtor has not complied with the disclosure requirements under the Local Bankruptcy Rules E.D.N.Y. LBR 2003-1—and as a result, "failed to comply with the most minimal responsibilities of a person legitimately seeking bankruptcy protection." *Id.* at *5.

Finally, and most compellingly indicative of bad faith, Campora has proactively filed fraudulent documents with the Court, drafted in the form of State Court orders, in a shocking and affirmative effort to mislead the Bankruptcy Court. No act could be a stronger sign of bad faith. It is clear under these circumstances, that appellant filed this bankruptcy action to thwart foreclosure of 1 Market Path, not to legitimately seek bankruptcy protection. "[W]hen a bankruptcy case has been filed only for the purpose of inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith." *In re Tornheim*, 239 B.R. at 686 (internal citations and quotations omitted). Accordingly, the Court affirms the Bankruptcy Court's dismissal of this action under a clear error standard, and notes that the dismissal would also certainly be affirmed under *de novo* review.

The Court also notes that the Bankruptcy Court properly dismissed this action with prejudice. "Whether to dismiss a case with prejudice is committed to the sound discretion of the court." *In re Montalvo*, 416 B.R. 381, 388-89 (Bankr. E.D.N.Y. 2009) (dismissing a case with prejudice under § 349(a) for one year after concluding that debtor's conduct amounted to "part of a scheme to delay, hinder, and defraud [the creditor]") (citing *In re Ventura*, 375 B.R. 103 (Bankr. E.D.N.Y. 2007)). It is well-established that Courts have discretion to bar refiling of a bankruptcy action for periods of a year or longer. *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327 (2d Cir. 1999) (finding that §§ 105 and 349 authorize dismissal with prejudice for a period greater than 180 days without any outside limit); *In re Tornheim*, 239 B.R. 677 (dismissing a bankruptcy case with prejudice for two years). The circumstances in this case, particularly the vexatious nature of the appellant's actions in the Bankruptcy proceeding, clearly warrant dismissal of this case with prejudice for a year. Accordingly, the Court concludes the Bankruptcy Court did not err in dismissing Campora's case with prejudice.

iv. Sanctions and Attorney's Fees

This Court also concludes that the Bankruptcy Court did not abuse its discretion in sanctioning Campora. ""Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients."" *MA Salazar, Inc. v. Inc. Vill. of Atl. Beach*, 499 B.R. 268, 274 (E.D.N.Y. 2013) (quoting *In re Plumeri*, 434 B.R. 315, 327-28 (S.D.N.Y. 2010)). "Under its inherent powers to supervise and control its own proceedings, a bankruptcy court 'may impose sanctions where: 1) the challenged claim was without a colorable basis and 2)

14

the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay.'" *In re Lerner*, 515 B.R. 26, 34 (Bankr. E.D.N.Y. 2014) (quoting *Dahiya v. Kramer*, No. 13-CV-3079 (DLI), 2014 WL 1278131, at *4 (E.D.N.Y. Mar. 27, 2014)).

The record of the case illustrates that the appellant repeatedly was disrespectful to the judicial process, the parties, and the Court. Further, appellant filed false documents in an effort to intentionally mislead the Bankruptcy Court to further delay the foreclosure of his property. The Bankruptcy Court was correct in concluding that Campora's conduct was "entirely without color of law and clearly motivated by improper purposes." (Decision and Order at 16.) Accordingly, under all the circumstances in this case, reviewing for abuse of discretion, the Court concludes that the Bankruptcy Court did not err in imposing sanctions in the amount of $10,000 against Campora.[11]

The Bankruptcy Court also imposed attorney's fees in the amount of $3,635.50 in favor of HSBC in order "to remedy Debtor's conduct in causing unnecessary expenses" due to his "improper litigious conduct." (Decision and Order at 18.) "[A] sanctions award serves many objectives, including compensation and deterrence" and as a result, may include "attorneys' fees reasonably incurred because of [the sanctionable] conduct." *Khan v. Mahia (In re Khan)*, 488 B.R. 515, 535-36 (Bankr. E.D.N.Y. 2013). In this case, reviewing for abuse of discretion, the Court concludes that the Bankruptcy Court did not err in determining that $3,635.50 constituted attorney's fees directly attributable to Campora's vexatious conduct.

### III. CONCLUSION

For the foregoing reasons, appellant's appeals in 14-CV-5066 and 14-CV-7123 are denied with prejudice. The Clerk of the Court shall enter judgment accordingly and close the cases.

SO ORDERED.

S/ Joseph Bianco

JOSEPH F. BIANCO
United States District Judge

Dated: September 1, 2015
Central Islip, New York

\* \* \*

Appellant is proceeding *pro se*. Appellees are represented by Neil H. Ackerman of Meltzer, Lippe, Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, NY 11501, and Marianne DeRosa, Standing Chapter 13 Trustee, 100 Jericho Quadrangle, Suite 208, Jericho, NY 11753.

---

[11] The Court notes that the Bankruptcy Court considered debtor's income in determining the monetary sanction: "Debtor's Schedules indicate that his monthly income is $6,270 and that, at a minimum, he has net monthly income of more than $5,000 per month. Thus by Debtor's own representations of his monthly income, he has the financial ability to pay a sanction of $10,000, which is less than two months of his income." (Decision and Order at 17.) Though the Bankruptcy Court is not required to take the debtor's income under consideration, it certainly has the discretion to do so. *See Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986) ("[G]iven the underlying purpose of sanctions—to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations—it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay.").